No. 21-15802

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————————

STEVEN W. CROWE,

Plaintiff-Appellant,

v.

CHRISTINE WORMUTH, Secretary of the Army,

Defendant-Appellee.

———————————————

On Appeal From the United States District Court
for the District of Hawaii

———————————————

## BRIEF FOR APPELLEE

———————————————

CLARE E. CONNORS #7936
  *United States Attorney*
  *District of Hawaii*

EDRIC M. CHING #6697
  *Assistant U.S. Attorney*
  *Room 6-100*
  *PJKK Federal Building*
  *300 Ala Moana Blvd.*
  *Honolulu, Hawaii 96850*
  *Telephone: (808) 541-2850*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

STATEMENT OF JURISDICTION ............................................. 3

STATEMENT OF THE ISSUES .................................................. 4

STATEMENT OF THE CASE ...................................................... 5

    A.    Statement of Facts ................................................ 5

            1.    Prior Incident Between Crowe and Officer Oda .......... 11

    B.    Procedural History ............................................... 13

    C.    MSPB Decision ..................................................... 14

    D.    District Court Proceedings ................................... 19

SUMMARY OF ARGUMENT ..................................................... 26

STANDARD OF REVIEW ........................................................... 27

ARGUMENT .................................................................................. 28

    A.    This Court Cannot Consider Arguments Raised For The First Time on Appeal ..................................... 28

    B.    The District Court Correctly Held that Crowe Failed to Exhaust Administrative Remedies for His Gender, Race and Retaliation Title VII Claims Because He Failed To Raise These Claims Related To His Termination Before the MSPB ............................. 30

    C.    Crowe's Sexual Orientation Discrimination Claim Were Properly Disposed by Summary Judgment ................. 38

1. The District Court Properly Held that Crowe Did Not Establish a Prima Facie Case of Sexual Orientation Discrimination Because Crowe Did Not Produce Comparator Data......................................38

2. The District Court Properly Held That the Legitimate, Non-Discriminatory Reasons For Crowe's Termination Were Pretext, Or Unworthy Of Belief........................................................44

D. Crowe's Argument That He Raised a Genuine Issue of Material Fact Regarding his Retaliation Claim Is Not Proper Because Crowe's Retaliation Claim Was Dismissed on Procedural Grounds ........................................47

E. The District Court's Affirmance of the MSPB's Decision Upholding the Removal Was Proper As the District Court Gave Deference To The MSPB's Credibility Finding  In Favor of Garcia and Against Crowe .................48

CONCLUSION .........................................................................51

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Bergene v. Salt River Agr. Imp. & Power Dist.*,
  272 F.3d 1136 (9th Cir. 2001) ........................................................... 45

*Bolton v. Merit Sys. Prot. Bd.*,
  154 F.3d 1313 (Fed. Cir. 1998) ......................................................... 49

*Brantley v. NBC, Universal, Inc.*
  675 F.3d 1192 (9th Cir. 2012) ........................................................... 28

*Brown v. City of Tucson*,
  336 F.3d 1181 (9th Cir. 2003) ........................................................... 45

*Brown v. General Servs. Admin.*,
  425 U.S. 820 (1976) ........................................................................ 30

*Chappell v. Chao*,
  388 F.3d 1373 (11th Cir. 2004) ................................................... 32, 33

*Consol. Edison Co. v. N.L.R.B.*,
  305 U.S. 197 (1938) ........................................................................ 49

*Cornwell v. Electra Cent. Credit Union*,
  439 F.3d 1018 (9th Cir. 2006) ........................................................... 45

*German v. Pena*,
  88 F.Supp. 2d 222 (S.D.N.Y. 2000) .................................................. 33

*Gibson v. Prudential Ins. Co. of Am.*,
  915 F.2d 414 (9th Cir. 1990) ........................................................... 28

*In Re Mortg. Elec. Registration Sys., Inc.*,
  754 F.3d 772 (9th Cir. 2014) ............................................... 28, 40, 42

*Jones v. Dep't of Health & Hum, Servs.*,
  834 F.3d 1361 (Fed. Cir. 2016) ........................................................ 48

*Kloeckner v. Solis*,
  568 U.S. 41 (2012) ............................................................................ 3

Cases                                                                    Page(s)

*McAdams v. Reno,*
    64 F.3d 1137 (8th Cir. 1995) ............................................ 30, 31, 32, 34

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ..................................................................... 23, 44

*Montelongo v. Office of Pers. Mgmt.,*
    939 F.3d 1351 (Fed. Cir. 2019) ............................................. 28, 48, 49

*Moran v. Selig,*
    447 F.3d 748 (9th Cir. 2006) .............................................................. 39

*Peterson v. Hewlett-Packard Co.,*
    358 F.3d 599 (9th Cir. 2004) .............................................................. 38

*Rogers v. Dep't of Def. Dependents Sch., Germany Region,*
    814 F.2d 1549 (Fed. Cir. 1987) .......................................................... 49

*Santos-Reyes v. Gonzalez, No. C05-4550 VRW,*
    2007 WL 988182 (N.D. Cal. Apr. 2, 2007) ........................................ 33

*Scalese v. Babbitt, No. 98-35524,*
    1999 U.S. App. Lexis 26605 (9th Cir. 1999) ..................................... 31

*Steckl v. Motorola, Inc.,*
    703 F.2d 392 (9th Cir. 1983) .............................................................. 43

*Vasquez v. Cty. of Los Angeles,*
    349 F.3d 634 (9th Cir. 2003) ....................................................... 39, 45

*Villarimo v. Aloha Island Air, Inc.,*
    281 F.3d 1054 (9th Cir. 2002) ........................................................... 45

*Williams v. City & County of San Francisco, No. C09-05063 JSW,*
    2011 U.S. Dist. LEXIS 51684 (N.D. Cal. May 13, 2011) ................. 39

*Wolf v. Buss (Am.), Inc.,*
    77 F.3d 9144 (7th Cir. 1996) ....................................................... 44-45

ii

## Statutes and Rules                                    Page(s)

5 C.F.R. § 1201.151 ................................................................. 31

5 C.F.R. § 1201.175 ................................................................ 31

5 U.S.C. § 7701 ...................................................................... 31

5 U.S.C. § 7702 .................................................................. 3, 31

5 U.S.C. § 7703 ............................................................ 3, 28, 48

28 U.S.C. § 1291 ..................................................................... 4

29 C.F.R. § 405 ...................................................................... 31

29 C.F.R. § 1613.401 ............................................................. 31

29 C.F.R. § 1613.403 ............................................................. 31

29 C.F.R. § 1613.421 ............................................................. 31

29 C.F.R. § 1614.302(b) ......................................................... 32

42 U.S.C. § 2000e-16(c) ........................................................ 30

Fed. R. App. P. 4 ..................................................................... 4

**INTRODUCTION**

This case arises out of the misconduct of Plaintiff-Appellant Steven W. Crowe (Crowe), a Tripler Army Medical Center (TAMC) military police officer, who had sexual relations with another federal employee during his duty hours in an out-of-the-way TAMC police officer training room. Following an incident when Crowe aggressively confronted a TAMC employee about personal matters in the TAMC emergency department, Supervisory Police Officer Michael Ballesteros (Officer Ballesteros) was assigned by his supervisors to initiate an investigation. Officer Ballesteros initiated the investigation by instructing another TAMC police officer to interview specific witnesses.

Once Officer Ballesteros received the summary of the interviews of these witnesses (which confirmed that Crowe participated in sexual activity on duty, socialized for long periods of time while on duty and confronted another TAMC employee on duty in an aggressive manner about personal issues while carrying his firearm), he made an independent proposal to remove Crowe based on his abuse of authority, having sexual relations while on duty and not performing his duties when he socialized for extended periods of time while on duty. The

deciding official adopted Officer Ballesteros' recommendation and Crowe was removed from his position as a TAMC police officer.

As will be noted below, this Court should affirm the district court's (1) dismissing Crowe's sex and race discrimination, hostile work environment and retaliation claims, (2) granting summary judgment as to Crowe's sexual orientation discrimination claims and (3) affirming the Merit System Protection Board's (MSPB) decision to sustain Crowe's removal.

The majority of the arguments set forth in the Opening Brief (Opening Br.) were not raised before the district court and this Court cannot consider these arguments. Even if these issues were properly before this Court, Crowe clearly abandoned his sex and race discrimination, hostile work environment and retaliation claims by failing to raise these claims before the MSPB.

Crowe also failed to raise a genuine issue of material fact regarding a prima facie case of sexual orientation discrimination because he failed to present any comparator data. Crowe also failed to raise a genuine issue of material fact that the legitimate, non-discriminatory reasons for Crowe's removal were pretext.

2

Finally, the district court properly affirmed the MSPB Administrative Law Judge's (ALJ) decision upholding the removal, finding that ALJ's decision was based on substantial evidence and correctly affording deference to the ALJ's credibility finding.

## STATEMENT OF JURISDICTION

Crowe filed a mixed case federal court complaint appealing the MSPB decision on his mixed case appeal, affirming his removal from federal service and finding no sexual orientation discrimination under Title VII.

As to the record review appeal of his removal and his Title VII claims, Crowe invoked the jurisdiction of the district court pursuant to 5 U.S.C. §§ 7702-7703. *See Kloeckner v. Solis*, 568 U.S. 41 (2012).

On March 2, 2021, the district court entered a final judgment affirming the MSPB's decision sustaining his removal, granting summary judgment as to Crowe's sexual orientation discrimination claims and dismissing his remaining Title VII claims (race, non-sexual orientation gender discrimination and retaliation) for lack of jurisdiction based on Crowe's failure to exhaust administrative remedies. Crowe filed a timely notice of appeal on April 30, 2021.

Excerpt of Record (ER) 9-ER-1829-1833; *see* Fed. R. App. P. 4(a)(1)(A). This court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether this Court can properly consider the issues in the Opening Brief that Crowe failed to raise before the district court.

2.     Whether the district court correctly dismissed Crowe's retaliation, race and gender (non-sexual orientation) discrimination Title VII claims, which arose out of Crowe's removal and the investigation that led to his removal, for his failure to exhaust administrative remedies when Crowe filed a mixed case appeal with the MSPB and failed to raise these claims with the MSPB.

3.     Whether the district court correctly granted summary judgment to the Army on Crowe's Title VII sexual orientation discrimination claims when it found that Crowe failed to raise a genuine issue of material fact that he established a prima facie case of discrimination by failing to produce comparator evidence and that the Army's legitimate, non-discriminatory reasons for Crowe's removal were pretext.

4.     Whether this Court can consider Crowe's argument that a

4

genuine issue of material fact existed regarding his retaliation claim when the district court dismissed Crowe's retaliation claim on procedural grounds in the Rule 12 context.

5.     Whether the district court properly affirmed Crowe's removal where substantial evidence of Crowe's misconduct supported his removal and the ALJ correctly made a credibility finding against Crowe and in favor of TAMC employee Anela Garcia regarding their on-duty sexual activities.

## STATEMENT OF THE CASE

### A.     Statement of Facts

At all relevant times, Crowe was employed as a GS-5 police officer in the Office of the Provost Marshal at the TAMC.  2-ER-383, 1074.  Crowe's first level supervisor was Officer Ballesteros and his second level supervisor was Deputy Chief Provost Marshal James Ingebredtsen (DPM Ingebredtsen).  3-SER-557; 2-ER-159.

On or about April 12, 2016, John Novosel (Novosel), a supervisor assigned to the TAMC Emergency Department, provided Officer Ballesteros with an e-mail dated April 9, 2016 from James Sewell (Sewell) that described his encounter with Crowe in the TAMC

Emergency Department. 2-ER-183, 185, 190. The April 9, 2016 e-mail stated that (1) Crowe approached Sewell in the TAMC Emergency Department and stated, inter alia, "Hey James what's up with this bitch? Your girl Anela … She is putting me in some mix saying that I was jealous of you and her", (2) Crowe was "spreading lies" and cultivating conflict among staff in the TAMC Emergency Department, including informing other employees that Sewell and, his co-worker, Anela Garcia were involved in a relationship and (3) Crowe was carrying a gun at the time of the unprovoked angry confrontation, causing him to feel endangered. 2-ER-185.

Officer Ballesteros consulted with DPM Ingebredtsen, and Provost Marshal Kevin Guerrero and was instructed to conduct an investigation. 2-ER-191. Subsequently, Officer Ballesteros assigned Kevin Oda, the Operations Officer (Officer Oda), to investigate the incident, as Officer Oda was the first person Officer Ballesteros encountered after the consultation and Officer Oda was available to do the investigation. 2-ER-191-192.

Officer Ballesteros instructed Officer Oda to speak with Sewell, Kiana Ah Lee Sam (Ah Lee Sam), Vasthi Tabangcura (Tabangcura)

6

and Anela Garcia (Garcia). 2-ER-208, 212. Officer Oda subsequently obtained sworn statements from Sewell, Ah Lee Sam, Tabangcura and Garcia. 2-ER-208-214, 220-233; 2-SER-254-257, 259-269.

In her sworn statement, Garcia stated (1) that she and Crowe engaged in sexual relations three to four times a week at TAMC for approximately six months while Crowe was on duty and in a police uniform, (2) Crowe removed his duty belt (containing his service weapon) during their sexual relations, (3) she and Crowe engaged in sexual relations in a police training room (and she described the layout of the training room) and (4) he would bring wipes to the room where they engaged in sexual activity. 2-ER 230-233; 2-SER-254-257.

Tabangcura stated in her sworn statement that (1) she observed Crowe in her VA Acute Care Clinic chatting with VA personnel for several hours, (2) Crowe showed her photos of various women he was having sex with, (3) Garcia informed her that she and Crowe had sexual relations on the 10th Floor and (4) Crowe used wipes to clean up when their sexual encounters concluded. 2-ER 227-229; 2-SER-263-265.

7

In her sworn statement, Ah Lee Sam stated that (1) Crowe would stay at the ACC for several hours talking to VA employees, (2) Crowe was spreading gossip about Ah Sam's fiancé, Sewell, and Garcia having relationship, (3) Crowe informed her "that he had a room where he could take a friend" and (4) she did not feel comfortable around Crowe because he would speed past them in his truck and give them funny looks. 2-ER-223-226; 2-SER-259-262.

In his sworn statement, Sewell stated that (1) Crowe approached him while in uniform at the TAMC emergency department and stated that Garcia was putting them in a love triangle, (2) Ah Lee Sam knew about this situation, (3) Garcia earlier informed him about his relationship with Crowe and (4) he felt uneasy around Crowe. 2-ER-220-222; 2-SER-267-269.

On May 12, 2016, Officer Ballesteros placed Crowe on temporary detail, without police powers, performing administrative duties for 30 days, pending an investigation due to the alleged sexual misconduct. 2-ER-150, 250 and 264; 2-SER-181.

On May 19, 2016 and May 20, 2016, Crowe called in sick for the period from May 19, 2016 to May 22, 2016. 2-ER-345; 2-SER-208.

8

Crowe noted that he had a doctor's note and would be re-evaluated by his doctor on May 23, 2016.  2-ER-345; 2-SER-208.  Crowe also subsequently presented a doctor's note indicating he was temporarily totally disabled from May 20, 2016 to May 23, 2016.  2-ER-253-254, 342.  However, Officer Ballesteros learned that on May 20, 2016, Crowe accompanied his girlfriend to Waikiki to eat dinner, ride a catamaran and watch fireworks.  2-ER-193-195, 254 and 343; 2-SER-211-212.

Crowe's administrative detail was subsequently extended indefinitely on June 10, 2016, as the investigation was ongoing.  2-ER-165 and 178; 2-SER-182.  Officer Ballesteros met with Crowe and his union representative on two occasions prior to proposing any disciplinary action in order to hear Crowe's side of the story and any rebuttal.  2-ER-165-167, 179-180; 4-ER-661-662; 2-SER-185-186.

On November 4, 2016, after hearing from Crowe and his representative, Officer Ballesteros proposed Crowe's removal based upon four separate charges: (1) Crowe abused his authority by while wearing his police uniform and service weapon, aggressively confronting a TAMC employee over a personal matter at work, putting

9

that employee in fear for his safety; (2) Crowe repeatedly engaged in sexual activity with a female co-worker while on duty; (3) Crowe repeatedly failed to perform the required duties of his position by spending hours socializing with Veteran's Administration employees rather than performing his duties; (4) Crowe submitted a fraudulent sick note from his doctor claiming total temporary incapacitation (Crowe went on a dinner cruise in Waikiki on the same day he claimed sick leave). 2-ER-164; 2-SER-230-233.

The Notice of Proposed Removal informed Crowe of his right to "submit an oral and/or written reply" in response to the proposed removal and to have a representative help with the reply. 2-ER-174-177; 2-SER-230-233. On February 14, 2017, DPM Ingebredtsen made an independent decision based on (1) his review of the evidence submitted in the Notice of Proposed Removal, (2) Crowe's rebuttal information, (3) alternative statements made by the VA employees and (4) his consultation with subject matter expert Norman Nakata, of CPAC (Civilian Personnel Office), to issue a decision to remove Crowe from federal service. 2-ER-199-202, 347-351; 2-SER-75-79. DPM Ingebredtsen also considered the alleged "recanting" statement made

10

by Garcia not made under oath and after determining that the version of the events in the sworn statement was corroborated by other witnesses' testimony, he considered the sworn statement more credible. 2-ER-203-204; 2-SER-157-161.

### 1. Prior Incident Between Crowe and Officer Oda

In February 2016, Crowe alleged that Officer Oda had called him a "fag" in introducing him to a new officer. 2-ER-160, 170. After Crowe complained to management, Officer Oda admitted to using the term and received counseling from Officer Ballesteros. 2-ER-161 and 171; 3-SER-491. Officer Ballesteros subsequently issued a Memorandum of Counseling on February 24, 2016. 2-ER-171; 3-SER-491. On February 25, 2016, Officer Ballesteros called a meeting between Crowe and Officer Oda whereby Officer Oda apologized to Crowe, they shook hands and Crowe stated that he "did not want this to go any further". 2-ER 162, 172 and 197; 3-SER-494.

At no point did Officer Oda believe that Crowe was gay when he used the term "fag."[1] 2-ER-239. Officer Ballesteros did not know or

---

[1] Officer Oda and Officer Ballesteros used the term in the context of being weak or afraid. 2-ER-168, 217 and 218.

believe Crowe was gay or bisexual when he counseled Officer Oda in February 2016 or in May 2016 when he asked Officer Oda to investigate the TAMC Emergency Department incident.  2-ER-196.  In Crowe's EEO complaint, filed in August 2016, months after the investigation was complete, he stated that: "I am not gay but Officer Oda has had access to my Facebook profile where he can see that several of my relatives are openly gay so I interpreted his comment as a hate comment towards my sexual orientation."  2-ER-250, 259.

On December 16, 2016, more than a month after Crowe had been proposed for removal, Crowe alleged that he was in fact gay and that "Officer Oda trolled [his] Facebook page and discovered [his] sexual orientation and outed [him] to the department."  2-ER-357-359.  Two years later, in February 2018, Crowe provided sworn testimony that he informed Officer Oda that he was bisexual in January 2016.  2-ER-365-366.  Neither Officer Oda nor Officer Ballesteros considered the term "fag" or "faggot" as relating to a "homosexual" or "homosexuality" in the context of the February 2016 comment.  2-ER-168; 217-218.

Officer Ballesteros did not factor the February 2016 incident when deciding to assign Officer Oda to investigate the subject matter

because he felt that the February 2016 incident was resolved after (1) Officer Oda was counseled, (2) Crowe accepted Officer Oda's apology during a face-to-face meeting, and (3) Crowe stated that he wanted to put an end to the incident. 2-ER-192.

## B. Procedural History

On August 15, 2016, Crowe filed a formal EEO complaint alleging discrimination on the basis of race and sexual orientation when Officer Ballesteros assigned him to administrative duties, removed his police powers and assigned Officer Oda to investigate him.[2] 2-ER-109, 150, 250. Crowe subsequently amended his EEO complaint on November 5, 2016 to allege retaliation for filing an EEO complaint when Officer Ballesteros proposed his termination on November 4, 2016. 2-ER-251, 281-282. The issues accepted for investigation by the Agency included whether Crowe was subjected to discrimination when Officer Ballesteros assigned Officer Oda to the Crowe investigation. 2-ER-282.

---

[2] The majority of the facts in the section were not disputed by Crowe in his Counter-Statement and Concise Statement of Facts. 2-ER-106-111 and 145-151. Thus, the Court cannot consider Crowe's attempts to dispute the facts that he failed to dispute before the district court.

13

On March 29, 2017, Crowe also filed a mixed case appeal over his removal to the MSPB and claimed that the removal was based on sexual orientation discrimination.  2-ER-110, 150, 251-252, 286-287, 304-341.  During two telephonic MSPB status conferences on April 27, 2017 and June 5, 2017, Crowe confirmed that he only intended to raise sexual orientation discrimination as an affirmative defense.  2-ER-110, 150, 252, 294-303.

The ALJ initially dismissed the MSPB appeal without prejudice because she found that Crowe filed an EEO complaint over his removal.  2-ER-110, 150, 304.  However, the ALJ indicated that Crowe could re-file the MSPB appeal if he received no decision on the EEO complaint within 120 days.  2-ER-368-373.  Crowe subsequently re-filed the MSPB appeal on December 6, 2017 and the MSPB assumed jurisdiction over the discrimination claims from Crowe's prior appeal to the MSPB to avoid unnecessary duplication.  2-ER-110, 150, 252, 304-305.

### C.    MSPB Decision

On May 24, 2018, the ALJ issued an Initial Decision finding that Crowe's removal was appropriate and that he had not been

discriminated against on the basis of his sexual orientation after three days of hearings. 2-ER-304-341.

The ALJ found that the Army proved by a preponderance of the evidence its charge of "Conduct Unbecoming of a Police Officer". 2-ER-308. The ALJ found that the Army proved the charge that Crowe engaged in sexual activity with another TAMC employee in the TAMC training room on numerous occasions, took wipes from a machine to clean up after the sexual activity and removed his belt while he was having sex with the TAMC employee. 2-ER-304-341.

The ALJ referenced Garcia's testimony regarding: (1) the location of the training room, (2) the contents and layout of the training room, (3) using wipes from the dispensing machine to clean up after the sexual encounters, (4) Crowe being in uniform when they met and (5) removing his firearm prior to engaging in sex. 2-ER-309-310.

The ALJ credited Garcia's testimony over Crowe's claim that (1) he had erectile dysfunction that required him to take medication prior to having sex, (2) he had only been to the training room several times and (3) the wipe dispensing machine required login to remove wipes. 2-ER-310-311. The ALJ also found that Crowe's testimony on certain

15

subjects, i.e., needing a code to access the wipes, the placement of video cameras and being able to override the alarm system, was contradicted by the testimony of other witnesses. 2-ER-314-315.

The ALJ noted that Garcia was sincere and forthright and her testimony was consistent internally and with the record. 2-ER-310-311. The ALJ also found that Officer Oda and Officer Ballesteros gave credible testimony. The ALJ noted that Garcia's description of the training room was consistent with the descriptions given by other witnesses and that the statements given by Ah Lee Sam and Tabangcura corroborated Garcia's testimony. 2-ER-311.

The ALJ noted that Garcia's credibility was challenged by her recanting her original statement and then recanting the "recanting statement." 2-ER-312. The ALJ credited her original statement because it was made under oath and was made before she and Crowe were the subject of removal actions. 2-ER-312. The ALJ found that her subsequent statements were motivated by the "exigencies of the circumstances." 2-ER-312-313.

The ALJ also found that Crowe's claim that Officer Oda masterminded the conspiracy against him improbable because Officer

Ballesteros initiated the investigation and assigned Office Oda to conduct the investigation. 2-ER-313. The ALJ also noted that Officer Oda apologized for using the term "faggot" and Officer Oda thought that the matter was resolved. 2-ER-313. The ALJ found that there was no evidence that Officer Oda coerced any of the witnesses to give testimony against Crowe. 2-ER-313.

The ALJ also found that the Army proved by a preponderance of the evidence that Crowe spent lengthy time socializing with VA staff, showed Ah Lee Sam and Tabangcura photographs of the women he was dating and engaged in discussions of a sexual nature with Ah Lee Sam and Tabangcura. 2-ER-318. Both Ah Lee Sam and Tabangcura testified that they observed Crowe socializing for extended periods of time and Crowe discussed his dating life and sexual activities with them. 2-ER-317. The ALJ found Ah Lee Sam and Tabangcura to be calm and direct and noted that each gave internally consistent testimony. 2-ER-317. The ALJ found that Ah Lee Sam and Tabangcura to be credible and noted that Crowe was not credible. 2-ER-317-318.

17

The ALJ also found that the Army proved by a preponderance of the evidence that Crowe confronted Sewell in the TAMC emergency department on personal matters. 2-ER-318. The ALJ found Sewell gave specific and detailed testimony that was internally consistent. 2-ER-317. The ALJ found that Sewell to be credible and noted that Crowe was not credible. 2-ER-317-318.

The ALJ held that the Army did not prove the specification that Crowe abused his sick leave. 2-ER-319-320. However, the ALJ sustained charge of misconduct and the removal. 2-ER-321.

The ALJ further held that the Army did not commit harmful procedural error when Officer Ballesteros assigned Officer Oda to investigate Crowe. 2-ER-321-323. The ALJ held that Crowe did not prove that the Army discriminated against him based on his sexual orientation. 2-ER-323. The ALJ found that there was no evidence that the Army discriminated against Crowe based on his sexual orientation. There was no evidence that Officer Oda, Officer Ballesteros or DPM Ingebredtsen knew of Crowe's sexual orientation. 2-ER-327. The ALJ's decision did not address any other basis of discrimination or retaliation. 2-ER-328.

18

The ALJ found that there was a nexus between the charge and the ability of Crowe to perform his duties as the alleged conduct occurred at work and affected the Army's trust in Crowe to perform his duties. 2-ER-328. The ALJ also found that DPM Ingebredtsen properly considered the *Douglas* factors and the removal was consistent with the range of penalties within the Army's Table of Penalties and within the tolerable limits of reasonableness. 2-ER-330. The Initial Decision became final on June 28, 2018. 2-ER-334.

### D.   District Court Proceedings

Crowe filed his Complaint on July 27, 2018. 2-ER-381-390. In the Complaint, Crowe alleged that he was subjected to sexual harassment, a hostile work environment and he was eventually terminated based on his sexual orientation, sex (male), race and reprisal for his protected activity. 2-ER-381-382. Crowe also appealed the decision of the MSPB, claiming that the decision of the MSPB was arbitrary and capricious, an abuse of discretion and otherwise not supported by the law. 2-ER-389.

On December 27, 2019, the Army filed a Motion To Dismiss, Or In the Alternative, For Summary Judgment based on Crowe's failure to

exhaust administrative remedies as to his race and gender discrimination and retaliation claims, Crowe was unable to bring a sexual orientation discrimination claim pursuant to Title VII or, in the alternative, to grant summary judgment on all claims. 1-SER-192-219.

On January 16, 2020, the district court stayed this matter pending the Supreme Court's decision addressing whether sexual orientation discrimination was within the scope of Title VII. ECF No. 64. Following the Supreme Court's June 15, 2020 decision that Title VII covered sexual orientation discrimination, the Army withdrew its argument that Title VII barred Crowe's sexual orientation discrimination claim. ECF Nos. 67 and 68.

The Court then lifted the stay and set a briefing schedule for the Motion and Crowe's request for the review of the MSPB decision, which was subsequently amended several times. ECF Nos. 74 and 82. Crowe filed his Opposition to the Motion ("Motion Opposition") on January 21, 2021, ECF No. 85, and the Army filed its Reply on January 27, 2021, ECF No. 88. In the Motion Opposition, Crowe argued that he made timely EEO contact, filed his Formal EEO Complaint, requested an EEO hearing and then filed his Complaint in United States District

Court after his EEO Complaint was not resolved within 180 days. ECF No. 85, Page ID#: 2705-2706.

In the Motion Opposition, Crowe did not: (1) present any comparator evidence that someone outside his protected class was treated more favorably, (2) argue that he raised retaliation and discrimination based on sex and race before the MSPB, (3) argue that the legitimate, non-discriminatory reasons for his removal were pretext, (4) argue that he exhausted his administrative remedies because he raised separate discrete pre-removal actions as separate claims: *viz.*, the investigation, placement on administrative duty, denial of overtime, (5) argue that the ALJ addressed Crowe's race and sex (non-sexual orientation) discrimination and retaliation claims, (6) that "there is reason to believe Ballesteros shared Oda's bias and prejudices against plaintiff" because he "barely admonished Oda" for using the word fag and "did not demand a thorough investigation into Oda's use of slurs," or (7) that Officer Oda, based on his alleged bias, somehow affected the investigation when carrying out specific instructions provided by Officer Ballesteros.

With regard to Crowe's appeal of the MSPB decision, Crowe filed his Opening Brief on September 8, 2020, ECF No. 76, and the Army filed its Answering Brief on November 12, 2020, ECF No. 80. Crowe filed his Reply Brief on January 28, 2021, ECF No. 89.

A telephonic hearing was held on February 11, 2021. ECF No. 92. On July 30, 2018, the district court issued an Order Granting The Army's Motion To Dismiss (ECF No. 55) And Affirming The Agency's Decision Upheld By the Merit Systems Protection Board ("Order"). 1-ER-95.

In granting the Army's request to dismiss Crowe's retaliation, race and sex discrimination and hostile work environment claims, the district court noted that Crowe failed to raise these claims before the MSPB. 1-ER-23-24. The district court noted the following timeline:

- On August 15, 2016, Crowe filed a non-mixed complaint alleging discrimination and a hostile work environment
- After the NOPR was issued, he amended his EEO Complaint to allege retaliation.
- After Crowe was removed, he amended his EEO Complaint to make it a "mixed-case" EEO complaint.
- Crowe then attempted to appeal his removal to the MSPB but the ALJ dismissed the appeal because of the pending EEO Complaint.
- Crowe was advised that he could re-file his MSPB Appeal with the MSPB after 120 days passed without an EEO decision.

- On December 6, 2017, Crowe re-filed his MSPB Appeal which, in effect, transferred what was raised in the EEO Complaint to the MSPB proceeding.

1-ER-24-25.

The district court noted that Crowe chose to proceed with a mixed case in the EEO process when he amended his EEO complaint to include his removal.  1-ER-28.  Crowe then chose to file a mixed case appeal with the MSPB and chose to pursue all his claims with the MSPB.  1-ER-28-29.  The district court noted that it was undisputed that Crowe only proceeded with the affirmative defense of sexual orientation discrimination before the MSPB and the Court lacked jurisdiction over any other claims of retaliation or discrimination.  1-ER-28-29, 2-ER-110, 296, 299, 304.

In granting the Army's request for summary judgment on Crowe's sexual discrimination claims, the district court applied the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Crowe's claim was investigated and ultimately terminated based on his sexual orientation.  1-ER-28-41.

The district court found that Crowe did not establish a prima face case of sexual orientation discrimination.  More specifically, Crowe

failed to establish that similarly situated individuals outside their protected class were treated more favorably as Crowe did not proffer comparator data and that the decision makers possessed knowledge that the deciding and proposing officials possessed knowledge of his sexual orientation. 1-ER-33-34.

The district court held that even if Crowe established a prima facie case of discrimination, Crowe failed to establish that the Army's legitimate, non-discriminatory reasons for his termination was pretextual in nature. The district court noted that Crowe's "Opposition never addresses pretext or the Army's many legitimate reasons." 1-ER-37.

The district court also noted that the statements by Officer Oda and his being assigned to investigate Crowe did not raise a genuine issue of material fact as to the Army's discriminatory animus as Officer Ballesteros controlled the investigation. 1-ER-38-39. The district court also noted that DPM Ingebredtsen independently reviewed the investigation and consulted with a subject matter expert before making the final decision and there was no evidence of discriminatory animus

that suggests that their decisions were pretextual in nature.  1-ER-39-42.

The district court found and affirmed the decision of the MSPB and found that the ALJ's findings were reasonable, supported by substantial evidence, not arbitrary or capricious nor an abuse of discretion and in accord with relevant law.  1-ER-43-44.  The district court upheld the charge of "Conduct Unbecoming a Police Officer" which was supported by four specifications, (1) having on duty sexual relations with a TAMC employee, (2) spending long periods of time gossiping and conversing near the Health Services Department at TAMC (two separate incidents) and engaging in banter of a sexual nature, and (3) confronting a co-worker in the TAMC emergency department on a personal matter.  1-ER-44-53.

More specifically, the district court found that the ALJ properly made a credibility determination by highlighting that Garcia testified in a forthright manner and that her testimony was corroborated by other evidence, i.e., the location and context of the alleged sexual activity.  1-ER-48.  The district court properly disregarded Crowe's

25

attempt to "pick apart" Garcia's testimony by referencing the "ups and downs" of his relationship with Garcia.

Final judgment was entered on March 2, 2021. 1-ER-2. Crowe timely appealed. 9-ER-1829-1833.

## SUMMARY OF ARGUMENT

This Court cannot properly consider any arguments that were not made before the district court. On appeal, Crowe raises many issues for the first time and these arguments must be disregarded by the Court.

The district court correctly held that Crowe's failure to raise his race, gender (non-sexual orientation) and retaliation claims relating to his removal before his chosen forum, the MSPB, despite numerous opportunities to do so, constituted a failure to exhaust administrative remedies. 1-ER-22-25.

The district court properly held that Crowe did not establish a genuine issue of material fact that Crowe established a prima facie case of sexual orientation discrimination because he did not demonstrate that similarly situated employees outside his protected class were not terminated or that the investigation managed by Officer

26

Ballesteros and the termination ordered by DPM Ingebredtsen were the result of discrimination.  1-ER-32-35.

Even if Crowe established a prima facie case of sexual orientation discrimination, the district court properly found that Crowe did not raise a genuine issue of material fact that the Army's legitimate, non-discriminatory reasons for Crowe's termination were pretextual.  1-ER-35-43.

Crowe's argument that he raised genuine issues of material fact that he established a prima facie case of retaliation is improper because the district court dismissed Crowe's retaliation claim in the Rule 12 context.

The district court correctly affirmed the ALJ's decision affirming Crowe's removal as substantial evidence supported the ALJ's decision and the ALJ's decision was not arbitrary and capricious.  The district court properly gave deference to the ALJ's credibility determination in favor of the TAMC witnesses and against Crowe, and the ALJ carefully provided a reasonable basis for its credibility determination.

## **STANDARD OF REVIEW**

The district court's grant of summary judgment as to Crowe's

27

sexual orientation claims and dismissal of his remaining Title VII claims are reviewed *de novo*. *Brantley v. NBC, Universal, Inc.* 675 F.3d 1192, 1197 (9th Cir. 2012); *Gibson v. Prudential Ins. Co. of Am.*, 915 F.2d 414, 416 (9th Cir. 1990).

As to the CSRA claims, the Court may only "hold unlawful and set aside any agency action, findings, or conclusions" that, upon "review [of] the record," the Court deems "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see generally Montelongo v. Office of Pers. Mgmt.*, 939 F.3d 1351, 1353 (Fed. Cir. 2019).]

## ARGUMENT

### A.  This Court Cannot Consider Arguments Raised For The First Time on Appeal

Crowe's attempt to raise arguments that were not raised before the district court is improper.  Arguments not raised before the district court will not be considered for the first time on appeal.  *In Re Mortg. Elec. Registration Sys.*, Inc., 754 F.3d 772, 780 (9th Cir. 2014).

Crowe raises numerous issues for the first time on appeal. In the Motion Opposition, Crowe did not: (1) present any comparator evidence that someone outside his protected class was treated more favorably, (2) argue that he raised retaliation and discrimination based on sex and race before the MSPB, ECF No. 85, Page ID#: 2710, (3) argue that the legitimate, non-discriminatory reasons for his removal were pretext, (4) argue that he exhausted his administrative remedies because he raised separate discrete pre-removal actions as separate claims: *viz.*, the investigation, placement on administrative duty, denial of overtime, (5) argue that the ALJ addressed Crowe's race and sex (non-sexual orientation) discrimination and retaliation claims, (6) argue that "there is reason to believe Ballesteros shared Oda's bias and prejudices against plaintiff" because he "barely admonished Oda" for using the word "fag" and "did not demand a thorough investigation into Oda's use of slurs", and (7) argue that Officer Oda, based on his alleged bias, somehow affected the investigation when carrying out specific instructions provided by Officer Ballesteros.

Because these issues were raised for the first time on appeal, the Court cannot consider these arguments. As noted

below, even if these issues were properly before this Court, these arguments lack merit.

### B. The District Court Correctly Held that Crowe Failed to Exhaust Administrative Remedies for His Gender, Race and Retaliation Title VII Claims Because He Failed To Raise These Claims Related To His Termination Before the MSPB

Crowe failed to exhaust his administrative remedies as to his sex and race discrimination, and retaliation and hostile work environment claims which were related to his termination because he failed to raise these claims before the MSPB. Federal employees asserting Title VII claims must exhaust their administrative remedies as a precondition to filing a civil action in federal district court. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976). The requirements for processing employment discrimination claims are complex and merit careful attention by a claimant. *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995).

> Generally, the employee must seek relief from the Equal Employment Opportunity department of the employing agency, as required by the procedures outlined in Section 717(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c). *Id.* In some cases, federal employees affected by particular adverse employment actions may instead assert their related Title VII claims in connection with an appeal to

the MSPB, an independent, quasi-judicial federal administrative agency established to review civil service decisions. *See* 5 U.S.C. § 7701. These are considered "mixed cases" and are governed by specific procedures outlined in 5 U.S.C. § 7702.

A comprehensive statutory and regulatory scheme governs the processing of mixed cases. *See* 5 U.S.C. § 7702; 29 C.F.R. §§ 1613.401 - 1613.421; 5 C.F.R. §§ 1201.151 - 1201.175. A mixed case may be filed as a complaint with the agency's EEO department or as an appeal to the MSPB, but not both. 5 U.S.C. § 7702; 29 C.F.R. § 1613.403. Either agency is authorized, and required, to address both the discrimination issues and the civil service issues that arise in a mixed case. 5 U.S.C. § 7702(a). An employee who initially chooses to file an EEO mixed case complaint may, after 120 days have passed without a judicially reviewable action by the agency, appeal the matter to the MSPB, 5 U.S.C. § 7702(e)(2), and transfer the administrative review to that agency. EEOC regulations provide for the cancellation of a mixed case complaint if such an appeal is timely filed. 29 C.F.R. § 405(b).

*McAdams*, 64 F.3d at 1141-42.

Where a plaintiff initially files an EEO complaint relating to matters that eventually culminate in an action appealable to the MSPB, and he subsequently appeals that matter to the MSPB as a mixed case after 120 days, he is required to exhaust all related claims (even those in his initial EEO complaint) in the MSPB before filing a civil action. *McAdams,* 64 F3d. at 1143-44; *see also, Scalese v. Babbitt*, No. 98-35524, 1999 U.S. App. Lexis 26605 (9th Cir. 1999) ("However,

because Scalese challenged a managerial decision appealable to the MSPB as well as a claim of employment discrimination, his MSPB claim constituted a 'mixed case appeal.'  29 C.F.R. § 1614.302(b) (1998). This same regulation required the plaintiff to raise the entire mixed case appeal before either the MSPB or the EEOC, but not both."); *Chappell v. Chao*, 388 F.3d 1373 (11th Cir. 2004) (dismissing pre-removal discrimination claims relating or leading to termination where plaintiff filed an MSPB mixed case appeal but did not raise related pre-removal discrimination claims in the MSPB or subsequent proceedings stemming from MSPB appeal).

*McAdams* is instructive in this matter.  In *McAdams*, the plaintiff initially filed an administrative EEO complaint alleging hostile work environment based upon retaliation and sex discrimination over being investigated for various alleged improprieties.  *McAdams,* 64 F.3d at 1140.  Eventually, the investigation of the plaintiff's actions culminated in a demotion and removal.  *Id.*  The plaintiff then filed a mixed case appeal with the MSPB over the demotion and removal, and only raised "retaliation but did not pursue her other discrimination claims," including sex discrimination.  *Id.* at 1141.

32

After prevailing on her claims before the MSPB, the plaintiff subsequently attempted to bring her sex discrimination claim relating to the agency's investigation of her into federal court, seeking compensatory damages. *Id.* The court held that the basic issue was "whether plaintiff's discrimination claims should have been raised in her MSPB appeal" and that she abandoned her claims by not pursuing this claim before the MSPB. *Id.* The court noted that the discrimination claims brought before the agency and the MSPB "raised similar issues arising out of overlapping facts." *Id.* at 1143. *See also*, *Santos-Reyes v. Gonzalez*, No. C05-4550 VRW, 2007 WL 988182 (N.D. Cal. Apr. 2, 2007), *aff'd sub nom*, *Santos-Reyes v. Mukasey*, 308 F.App'x 100 (9th Cir. 2009); *German v. Pena*, 88 F.Supp. 2d 222, 225 (S.D.N.Y. 2000) ("Once an employee has chosen the agency in which he wishes to adjudicate his claims, he is required to bring all claims relevant to his discharge in that proceeding."); *Chappell,* 388 F.3d 1373 (dismissing pre-removal discrimination claims relating or leading to termination where plaintiff filed an MSPB mixed case appeal but did not raise related pre-removal discrimination claims in the MSPB or subsequent proceedings stemming from MSPB appeal).

33

This case is on point with *McAdams* as the *McAdams* plaintiff and Crowe both filed proceedings with both the agency and the MSPB and raised similar issues arising out of overlapping facts in both forums. In this case, Crowe initially filed an EEO administrative complaint alleging discrimination on the basis of his gender, race, and sexual orientation in August 2016 relating to the investigation into his alleged misconduct and performance issues. 2-ER-250. Crowe later amended his EEO administrative complaint to allege retaliation regarding his proposed removal arising out of the investigation. 2-ER-251, 281-282. Crowe subsequently amended his EEO complaint to include his subsequent removal (mixed case complaint) but then elected instead to file an MSPB appeal. 2-ER-251-252, 286-287, 304-341.

During two telephonic pre-hearing conferences with the ALJ, Crowe only asserted sexual orientation discrimination and did not allege any other claims of discrimination or retaliation. 2-ER-109-110, 150, 252, 294-303. The ALJ dismissed Crowe's MSPB appeal without prejudice (the MSPB appeal could be re-filed if the EEO Complaint was not adjudicated within 120 days) because Crowe's EEO Complaint

contained allegations of his removal. 2-ER- 110, 150. Crowe subsequently re-filed the MSPB appeal and the MSPB assumed jurisdiction over the discrimination claims raised by Crowe in the prior appeal. 2-ER-110, 150, 252, 304-305. In the Initial Decision, the ALJ only considered sexual orientation discrimination as an affirmative defense. 2-ER-110, 150, 328.

Crowe's chief argument in his Opening Brief that he was raising separate discrete pre-removal actions as separate claims: *viz.*, the investigation, placement on administrative duty, denial of overtime (which was not alleged in the EEO Complaint or the MSPB Appeal) and the proposed removal. As noted above, this argument was not raised before the district court and this Court cannot consider this issue.

Even if this argument was properly before this Court, it is clear that the issues in the EEO proceeding and the MSPB appeal overlapped. For example, the issues accepted for investigation for Crowe's EEO Complaint included assigning Officer Oda to the investigation. 2-ER-282. During the MSPB appeal, Crowe claimed that the Army committed harmful procedural error when Officer

Ballesteros assigned Officer Oda to the investigation and this claim

was addressed in the ALJ's decision. 2-ER-321-323.

Further, during oral argument, Crowe's counsel admitted that

the issue of assigning Officer Oda to the investigation was presented to

the MSPB.

> MR. SMITH: Sure. Well, like I said before the only ---
> what those cases say and what the --- what that means is
> that you can't have simultaneous claims. So you can't have
> a 14 day – or here, you can't have a termination both at the
> EEOC and the MSPB.
>
> But that's not the case here. He had his termination
> claim at the EEOC dismissed. And then he pursued it at
> the board. But his other claims, which were to be amongst
> other things, you know, subjected to being called a fag, and
> then subjected to an investigation that was headed by a
> person who called him a fag, those are all separate claims
> which went before the Merit Systems Protection Board…

1-SER-33-34 (Feb. 11, 2021 Hearing Tr. at 32:25-33:11).

Crowe's argument that the ALJ addressed his retaliation claim

(affirmative defense) lacks merit. First, this argument was not raised

before the district court and this Court cannot consider this argument.

Second, Crowe, in his Counter-Statement and Concise Statement of

Facts, did not dispute that the only discrimination claim addressed by

ALJ was sexual orientation discrimination, that his MSPB appeal only

referenced sexual orientation discrimination and that Crowe confirmed that he only intended to raise sexual orientation discrimination as an affirmative defense. 2-ER-110, 150-151. Thus, since these facts are deemed admitted, it is improper for Crowe to re-litigate this issue. Third, Crowe's argument is non-sensical as the ALJ's statement that Crowe failed to prove that the Army retaliated against him based on his sexual orientation does not mean that he adjudicated a retaliation claim. It is clear (as noted in page 37 of the Opening Br.) a Title VII bars retaliation for opposing any practice made illegal by Title VII. However, the ALJ's statement does not describe a retaliation claim since the basis for the discrimination is Crowe's being part of a protected class rather than Crowe participating in a protected EEO activity.

Thus, Crowe's failure to raise race and non-sexual orientation gender discrimination and/or retaliation before the MSPB constituted an abandonment of such claims and failure to exhaust his administrative remedies, and the district court properly dismissed these claims.

**C.  Crowe's Sexual Orientation Discrimination Claim Were Properly Disposed by Summary Judgment.**

Crowe failed to establish a prima facie case of sexual orientation discrimination and failed to demonstrate that the reasons proffered by the Army for his termination were pretext as will be shown below.

**1.  The District Court Properly Held that Crowe Did Not Establish a Prima Facie Case of Sexual Orientation Discrimination Because Crowe Did Not Produce Comparator Data**

Crowe failed to raise a genuine issue of material fact that similarly situated people outside his protected class were treated more favorably (comparator evidence).  In order to prove a prima facie case of discrimination, Crowe must demonstrate that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

In order to be similarly situated, employees must "have similar

jobs and display similar conduct." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). While providing a completely identical co-worker is not required, "individuals seeking relief must demonstrate, at the least, that they are similarly situated . . . in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). In evaluating how materiality operates in the context of an individual case, "[t]he question for the court is whether the purported purpose of the challenged action required similar treatment of the two employees or whether the different situations justified different treatment due to differences in the employees' status or other condition beside race." *Williams v. City & County of San Francisco*, No. C09-05063 JSW, 2011 U.S. Dist. LEXIS 51684, *13 (N.D. Cal. May 13, 2011).

The district court correctly held that Crowe failed to establish that he was treated differently than coworkers outside his protected category who committed similar offenses. As noted above, after a conducting a thorough investigation, Officer Ballesteros concluded that Crowe (1) confronted a co-worker in his police uniform while wearing his loaded service revolver; (2) repeatedly had sex for months with a

female co-worker during work hours at his workplace (an Army hospital); (3) spent hours conversing with employees outside his department rather than performing his duties and (4) abused his sick leave by falsely representing that he was "temporarily totally disabled" when he was not. 1-ER-174-177. Crowe failed to present evidence of any similarly situated TAMC employee (who committed similar offenses) who was not terminated.

Crowe, for the first time on appeal, improperly raises comparator data. Since the evidence was not raised before the district court, this Court cannot consider this issue. *In re Mortg. Electronic Registration Sys.*, Inc., 754 F.3d at 780.

Even if this issue was properly before this Court, these arguments raised in the Opening Brief clearly lack merit. Crowe's chief argument in response to this specific holding appears to be that Officer Oda "used language more offensive against Plaintiff than Plaintiff ever used against Sewell" and was promoted but was not terminated. Opening Br. at page 34.

It is clear that Officer Oda is not a comparator of Crowe. The allegations against Officer Oda involved the alleged use of offensive

language while the allegations against Crowe involved having sexual relations on TAMC property during work hours, removing his duty belt and uniform during duty hours and confronting a TAMC employee during duty hours about a personal matter. 2-ER-174-177.

Crowe also argues disparate treatment because Oda was not "thoroughly investigated" after the February 2016 incident. Opening Br. at 36. However, it is undisputed that Officer Ballesteros, on orders from his superiors, counseled Officer Oda about this incident and Officer Oda admitted the conduct. 2-ER- 160-162, 170-171.

Crowe also incorrectly argues that Officer Oda was involved in the proposed removal and the decision to remove "by virtue of being put in charge of the investigation that led to those decisions." Opening Br. at page 35. As noted above, the district court correctly held that Officer Ballesteros "managed" the investigation. 1-ER-34. It is undisputed that Officer Ballesteros ordered Officer Oda to interview Sewell, Ah Lee Sam and Tabangcura and to not interview Crowe due to union regulations. 2-ER-212, 214. Officer Ballesteros then met with Crowe and his union representative on two occasions (Officer Oda was not allowed to interview Crowe due to union rules) to allow for any

rebuttal before issuing his November 4, 2016 Notice of Proposed Removal. 2-ER-164-167, 174-177, 179.

Additionally, Crowe raises several new arguments on appeal: (1) his supervisors themselves exhibited anti-gay or bisexual animus by "put[ting] in charge a person who had recently been admonished for using slurs against Plaintiff in charge [sic] of investigating Plaintiff," (2) Officer Ballesteros knew Crowe complained about being called a "fag" meant that Ballesteros knew that Crowe was gay or bisexual and (3) that "there is reason to believe Ballesteros shared Oda's bias and prejudices against Plaintiff' because Ballesteros "barely admonished Oda" for using the word "fag" and "did not demand a thorough investigation into Oda's use of slurs." Opening Br. at pages 34-37 fn.8. Because Crowe failed to raise these arguments before the district court, this Court cannot consider these issues. *In re Mortg. Electronic Registration Sys.*, Inc., 754 F.3d at 780.

However, even if these issues were properly before the Court, it is clear that the district court properly held that Officer Oda's comments did not affect that the investigation and Crowe's termination was not the "result of discrimination." 1-ER-34. It is undisputed that Officer

Ballesteros was aware of one instance in which Officer Oda used the term "fag" but there is no evidence that Officer Ballesteros possessed knowledge of Crowe's sexual orientation. 2-ER-196, 250, 259. Therefore, Officer Ballesteros did not exhibit sexual orientation animus when he assigned Officer Oda to the investigation. Even if Officer Ballesteros knew about Crowe's sexual orientation, assigning Officer Oda to the investigation would not have established Officer Ballesteros' sexual orientation animus. *See, e.g.*, *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) ("[The plaintiff's] mere assertions that [the defendant] had discriminatory motivation and intent . . . were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment.")

Finally, Officer Oda's subsequent promotion did not constitute evidence of discrimination. The district court recognized that shortly after Officer Oda's comment, Officer Ballesteros immediately disciplined Officer Oda and made him apologize to Crowe for the use of the term. 1-ER-40-41, 2-ER-61-162, 171-172, 197. As noted above, there was no need to investigate Officer Oda because he admitted to the wrongdoing and apologized and all parties felt that the matter had

43

been resolved.  2-ER-162.

Based on the foregoing, it is clear that the district court properly found that Crowe failed to establish a prima facie case of sexual orientation discrimination.

> **2.** **The District Court Properly Held That the Legitimate, Non-Discriminatory Reasons For Crowe's Termination Were Pretext, Or Unworthy Of Belief**

Crowe failed to argue that the Army's legitimate non-discriminatory reasons for his termination were pretext to the district court and is barred from making this argument on appeal.  Even if this issue was raised before the district court and in his Opening Brief, it is clear that the district court properly found that the Crowe failed to establish pretext as Crowe was removed for egregious behavior and, as a TAMC police officer, he held a special position of trust.

To establish pretext, a plaintiff must demonstrate that the employer's stated reasons were a "pretext" or cover-up for unlawful discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802-04. "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf*

*v. Buss (Am.) Inc.*, 77 F.3d 914 (7th Cir. 1996) (internal quotation omitted).

Under Ninth Circuit law, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003) (quoting *Bergene v. Salt River Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001)); *Vazquez,* 349 F.3d at 642 (9th Cir. 2003); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029, n.6 (9th Cir. 2006) ("[A] plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action."); *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("In judging whether [the employer's] proffered justifications were 'false,' it is not important whether they were *objectively* false . . . . Rather, courts 'only require that an employer honestly believed its reason for its actions[.]'" (citation omitted)).

As noted above, the Army's legitimate, non-discriminatory reasons to remove him were: (1) Crowe, while wearing his police uniform and holstering a gun, aggressively confronted an Army

emergency room employee over personal matters during work hours putting the employee in fear of harm; (2) Crowe repeatedly engaged in sexual activity while on duty at his workplace; (3) Crowe repeatedly failed to perform the required duties of his position by instead spending hours socializing with hospital employees; and (4) Crowe abused his sick leave. 2-ER-174-177.

The district court properly found that Crowe did not address pretext or the many legitimate reasons for Crowe's termination. 1-ER-35. In Crowe's Motion Opposition, Crowe did not argue that the reasons for his termination was illegitimate or discriminatory or argue that the reasons for termination were pretext. As such, it is not proper for the Court to review the district court's finding that there was no genuine issue of material that the legitimate, non-discriminatory reasons for Crowe's termination was pretextual in nature.

Even if this issue was properly before the Court, it is clear that the district court properly held that there was no genuine issue of material fact that the legitimate, non-discriminatory reasons for Crowe's termination were pretext. With regard the comment made by Officer Oda, the district court also correctly held, as noted above, that

46

Officer Ballesteros "largely controlled the investigation" and gave Officer Oda specific directives with regard to the investigation. 1-ER-39. DPM Ingebredtsen then independently reviewed the investigation and consulted with a subject matter expert before deciding to remove Crowe. 1-ER-39.

The district court correctly held that Crowe failed to raise a genuine issue of material fact regarding pretext – or that Officer Ballesteros or DPM Ingebredtsen did not honestly believe the reasons to propose Crowe's removal and to remove Crowe, respectively. Based on the foregoing, it is clear that the district court properly granted summary judgment as to Crowe's sexual orientation claim.

### D. Crowe's Argument That He Raised a Genuine Issue of Material Fact Regarding his Retaliation Claim Is Not Proper Because Crowe's Retaliation Claim Was Dismissed on Procedural Grounds

The district court did not address the Army's argument for summary judgment on Crowe's retaliation claim because it correctly held that Crowe failed to administratively exhaust his retaliation claim. If this Court finds that the district court erred in dismissing Crowe's retaliation claim, this matter should be remanded to the

district court. Thus, Crowe's argument that he established a prima facie case of retaliation should be disregarded by the Court.

### E. The District Court's Affirmance of the MSPB's Decision Upholding the Removal Was Proper As the District Court Gave Deference To The MSPB's Credibility Finding In Favor of Garcia and Against Crowe

The district court properly affirmed the MSPB's decision to sustain removal as the bases for Crowe's removal were supported by substantial evidence and the district court properly gave deference to the ALJ's credibility findings. Section 7703 of Title 5 describes the scope of appellate review of the non-discrimination claims in a mixed case. *See* 5 U.S.C. §§ 7703(b)(1)(A) and (c). The Court may only "hold unlawful and set aside any agency action, findings, or conclusions" that, upon "review [of] the record," the Court deems "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* § 7703(c); *see generally Montelongo*, 939 F.3d at 1353. The petitioner "bears the burden of establishing error in the [MSPB's] decision." *Jones v. Dep't of Health & Hum, Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016) (internal quotation marks omitted). In addition, the Board's credibility

48

determinations are "virtually unreviewable on appeal." *Rogers v. Dep't of Def. Dependents Sch., Germany Region*, 814 F.2d 1549, 1554 (Fed. Cir. 1987) (emphasis added). Although the Court "review[s] the Board's legal determinations, such as statutory interpretation, de novo," *Montelongo*, 939 F.3d at 1353 (internal quotation marks omitted), the Court affords almost complete deference to the Board's underlying fact-finding and fact-bound determinations. *See Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). The Court will not disturb a factual finding unless no "reasonable mind might accept" the "relevant [record] evidence . . . as adequate" to "support" the finding. *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

Crowe's narrow argument that the district court erred by upholding the charge of repeatedly having sex on duty at his place of employment due to the ALJ's credibility findings as to Garcia and Crowe lacks merit. As noted above, the ALJ's credibility findings are given a vast amount of deference. The district court noted that the "ALJ emphasized the details provided in Ms. Garcia's testimony and the fact that her descriptions of the location and context were corroborated by other testimony and photographic evidence." 1-ER-48. Further the district court noted that the ALJ considered Garcia's

49

demeanor as a witness and found her to be "sincere and forthright, and her testimony to be unequivocal, detailed, internally consistent, consistent with the record, and not inherently improbable." 1-ER-48.

In contrast, the ALJ found that Crowe's explanation that he could not have had sex at work because his erectile dysfunction medication did not give him enough time made no sense because the medication itself indicated it was effective after an hour from dosing. 1-ER-48. Further, the district court properly found that Crowe's reliance on unsworn hearsay testimony from a roommate about what Garcia told the roommate did not defeat the ALJ's findings. Finally, Crowe referenced the lack of video footage, but as pointed out, there is no evidence that there were cameras in place or that would have confirmed or denied the sexual liaisons regardless. 1-ER-76.

Thus, the district court correctly affirmed the ALJ's credibility finding as to Crowe and Garcia and the ALJ's sustaining the charges against Crowe that supported his removal.

/ /

/ /

/ /

## <u>CONCLUSION</u>

For all the foregoing reasons, this Court should affirm the

judgment below in favor of the Army.

Respectfully submitted,

CLARE E. CONNORS
  *United States Attorney*

  *s/ Edric M. Ching*
EDRIC M. CHING
  *Assistant U.S. Attorneys*
  *Room 6100*
  *PJKK Federal Building*
  *300 Ala Moana Blvd.*
  *Honolulu, Hawaii  96850*

  *Telephone:  (808) 541-2850*
  *Edric.Ching@usdoj.gov*

APRIL 6, 2022, Honolulu, Hawaii.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-15802

I am the attorney or self-represented party.

**This brief contains** | 9,338 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [_____].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Edric Ching     **Date** | Apr 6, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                      *Rev. 12/01/2018*