No. 21-15802

═══════════════════════════════════════

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

═══════════════════════════════════════

STEVEN W. CROWE,
*Plaintiff-Appellant*,

v.

CHRISTINE WORMUTH, Secretary of the Army, sued in her official
capacity,
*Defendant-Appellee*.

─────────────────────────────────────

On Appeal from the United States District Court for the District
of Hawaii in No. 1:18-cv-00288-ACK-RT

─────────────────────────────────────

The Honorable Alan C. Kay

─────────────────────────────────────

## PLAINTIFF-APPELLANT'S REPLY BRIEF

CABALLERO LAW LLLC

MATEO CABALLERO
Hawaii Bar No. 10081
mateo@caballero.law
P.O. Box 235052
Honolulu, Hawaii 96823
Telephone: (808) 600-4749

SMITH HIMMELMANN AAL ALC

ELBRIDGE W. SMITH
Hawaii Bar No. 2079
shlaw@hawaii.rr.com
ELBRIDGE Z. SMITH
Hawaii Bar No. 10120
shlaw@hawaii.rr.com
745 Fort St Ste 311
Honolulu, HI 96813-3803
Telephone: (808) 523-5050
Facsimile: (808) 538-1382

April 27, 2022

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................ 1

ARGUMENT .................................................................................................. 3

    I.    Plaintiff Did Not Waive the Issues and Claims Raised on
        Appeal. ....................................................................................... 3

        A.    Plaintiff claimed that he administratively exhausted his
              sexual orientation discrimination and retaliation claims. .......... 5

        B.    Plaintiff claimed that issues of material fact concerning
              Defendant's discriminatory and retaliatory motive
              prevented granting Defendant summary judgment. ................... 7

        C.    Plaintiff has consistently claimed that the adverse actions
              taken against him were were both discriminatory and
              retaliatory in nature. ................................................................. 9

        D.    Plaintiff has consistently claimed that the recanted and
              re-recanted testimony of Garcia is insufficient to sustain
              the MSPB decision. .................................................................. 11

    II.    Defendant Failed to Address Plaintiff's Preservation of His Pre-
        Termination Discrimination and Retaliation Claims before the
        EEOC. ...................................................................................... 12

    III.    Slurs Used Repeatedly By Investigator into Plaintiff's Alleged
        Misconduct Are Sufficient Direct Evidence of Discriminatory
        Intent, Even Without Comparator Data. ............................................. 14

    IV.    Plaintiff Consistently Raised and Did Not Abandon His Pre-
        Termination and Post-Termination Retaliation Claims Before
        the EEOC and the MSPB, Respectively. ............................................. 19

    V.    Defendant, the MSPB, and the District Court All Failed to
        Address the Circumstances under Which Garcia Re-Recanted
        Her Testimony against Plaintiff, which Was under the Threat of
        Being Terminated Herself. ................................................................. 21

CONCLUSION ............................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Ballou v. McElvain*,
   29 F.4th 413 (9th Cir. 2022) .......................................................... 2, 14

*Dominguez-Curry v. Nevada Transp. Dep't*,
   424 F.3d 1027 (9th Cir. 2005) .............................................................. 17

*Farrens v. Esper*,
   806 F. App'x 539 (9th Cir. 2020)......................................................... 18

*Flemming v. Matteson*,
   26 F.4th 1136 (9th Cir. 2022) .............................................................. 11

*Garcia v. Allstate Ins. Co.*,
   357 F. App'x 773 (9th Cir. 2009)......................................................... 18

*Godwin v. Hunt Wesson, Inc.*,
   150 F.3d 1217 (9th Cir.1998) .............................................................. 17

*Gomez–Perez v. Potter*,
   553 U.S. 474 (2008) ............................................................................ 20

*Lam v. Univ. of Hawaiʻi*,
   40 F.3d 1551 (9th Cir. 1994) .............................................................. 17

*Lindsey v. SLTLA, LLC*,
   447 F.3d 1138 (9th Cir. 2006) ............................................................... 7

*Lowe v. City of Monrovia*,
   775 F.2d 998 (9th Cir.1985) ..................................................... 7, 14, 16

*Puerta v. United States*,
   121 F.3d 1338 (9th Cir. 1997) ............................................................... 3

*Savage v. Department of the Army*,
   122 M.S.P.R. 612 (2015)................................................................... 2, 20

*Thompson v. Runnels*,
   705 F.3d 1089 (9th Cir. 2013) ............................................................ 3, 4

*United States v. Pallares-Galan*,
  359 F.3d 1088 (9th Cir. 2004) .................................................................. 1, 3, 11

*Wong as Tr. of Anaplex Corp. Emp. Stock Ownership Plan v. Flynn-Kerper*,
  999 F.3d 1205 (9th Cir. 2021) ........................................................................ 11

*Yee v. Escondido*,
  503 U.S. 519 (1992) ......................................................................................... 3

**Statutes**

42 U.S.C. § 2000e-16 ............................................................................... 12, 21

42 U.S.C. § 2000e-5 ....................................................................................... 19

*O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir. 1996) ......... 19

**Other Authorities**

29 C.F.R. § 1614.407 ...................................................................................... 12

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Instead of defending the district court's flawed analysis on exhaustion, discrimination, and retaliation, and addressing the issues raised in this appeal head on, Defendant attempts to muddy the waters by asserting that Plaintiff waived several arguments made in the Opening Brief by not making those exact same arguments in district court. Defendant gets both the law and facts wrong.

As this Court has recognized on multiple occasions, "claims . . . are deemed waived or forfeited, *not arguments.*" *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (emphasis added). Here, Plaintiff addressed the same claims raised on the Opening Brief in district court, namely that (1) Plaintiff administratively exhausted all his discrimination and retaliation claims, (2) issues of material fact prevented granting Defendant summary judgment, (3) Plaintiff did not abandon his claim of retaliatory termination, and (4) the MSPB's[1] findings were not supported by substantial evidence. Indeed, in support of these claims, Plaintiff even made some of the same arguments that Defendant now claims have been waived on appeal.

On the merits, Defendant either misunderstands the relevant law or fails to defend the district court's flawed analysis altogether.

---

[1] Unless otherwise noted, acronyms and capitalized terms. including names, have the same meaning as those defined in Plaintiff-Appellant's Opening Brief.

Relying heavily on out-of-circuit decisions, Defendant fails to address Plaintiff's preservation of his pre-termination claims before the EEOC and the MSPB's jurisdictional limitations, which prevented it from resolving Plaintiff's pre-termination Title VII claims. Similarly, Defendant—like the district court—ignores the summary judgment standard and misunderstands this Court's decisions, which allow plaintiffs to demonstrate claims of disparate treatment through direct evidence of discriminatory intent without the need to resort to comparator data. *Ballou v. McElvain*, 29 F.4th 413, 426 (9th Cir. 2022) ("The existence of a comparator is not a prerequisite to stating a disparate treatment claim."). Defendant also misleadingly misrepresents the MSPB record and law, which shows that Plaintiff did not abandon his retaliatory termination defense before the Board, which under its own decisions treats—consistent with what the AJ and Plaintiff did here—retaliation as a form of discrimination. *Savage v. Department of the Army*, 122 M.S.P.R. 612 ¶ 37 (2015). Finally, Defendant does not address the MSPB's and district court's failure to consider the circumstances under which Garcia, Plaintiff's disgruntled ex-girlfriend, re-recanted her testimony against Plaintiff, namely, under the threat of being terminated herself.

Defendant's paltry arguments cannot rehabilitate the district court's flawed decision. This Court should reverse with instructions to proceed to trial on all claims.

## ARGUMENT

### I.    Plaintiff Did Not Waive the Issues and Claims Raised on Appeal.

Defendant claims that Plaintiff waived a number of the "arguments" made in the Opening Brief, because these "arguments" were allegedly not raised before the district court. Ans. Br. 28-30. This is both factually and legally wrong.

Both this Court and "the Supreme Court [have] made clear, it is claims that are deemed waived or forfeited, not *arguments*." *Pallares-Galan*, 359 F.3d at 1095 (emphasis added). "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. Escondido*, 503 U.S. 519, 534 (1992); *see also Puerta v. United States*, 121 F.3d 1338, 1341–42 (9th Cir. 1997) ("An argument is typically elaborated more articulately, with more extensive authorities, on appeal than in the less focused and frequently more time pressured environment of the trial court, and there is nothing wrong with that.").

Moreover, "once an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties." *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) (cleaned up). "Instead, the court retains the independent power to identify and apply the proper construction of governing law, and is free to consider an issue antecedent to and ultimately dispositive of the dispute before it." *Id*. (cleaned up). "For the same reason, parties

are not limited to the precise arguments they made below" and this Court "may consider new legal arguments raised by the parties relating to claims previously raised in the litigation." *Id*. (cleaned up). Here, Plaintiff made the claims asserted in the Opening Brief in district court and therefore, did not waive any claims, or arguments supporting such claims, on appeal.

The Opening Brief makes four fundamental claims: (1) Plaintiff administratively exhausted his pre and post-termination sexual orientation discrimination and retaliation claims, Op. Br. 20-23; (2) issues of material fact prevent granting summary judgment on those same claims, *id*. 29-30, (3) Plaintiff did not abandon his retaliatory termination claim before the MSPB, *id*. 40-43, and (4) the recanted and re-recanted testimony of Garcia was insufficient to sustain the MSPB's decision upholding Plaintiff's removal from his position with the Army. *Id*. 43-46. Plaintiff raised all of these claims in district court and the arguments that Defendant identified as being waived all support these claims.[2]

---

[2] Defendant purports to identify seven arguments that were allegedly waived. Ans. Br. 29. Defendant's characterization of arguments no. 2 and 5 in the Answering Brief is inaccurate, because at this stage, Plaintiff only asserts discrimination and retaliation claims based on sexual orientation, not race or gender (other than sexual orientation). *Id*. In any event, Plaintiff has consistently maintained that his discrimination and retaliation claims based on sexual orientation were exhausted before the EEOC (pre-termination) and MSPB (termination-related). Of the remaining five arguments, four arguments–nos. 1, 3, 6, and 7 in the Answering Brief—all support the claim that summary judgment on Plaintiff's sexual orientation discrimination claim was inappropriate in light of the direct and indirect

## A.    Plaintiff claimed that he administratively exhausted his sexual orientation discrimination and retaliation claims.

Plaintiff claimed in district court that he had exhausted his sexual orientation discrimination and retaliation claims by raising such claims before the EEOC for pre-termination adverse actions and before the MSPB for retaliatory and discriminatory termination.

In district court, Plaintiff argued that "[p]rior to his removal, Plaintiff had also filed a complaint with the [EEOC], alleging discrimination on the bases of sex (and sexual orientation) and race, *for events prior to his termination*." FER-55. (emphasis added). Plaintiff also argued that he had exhausted such claims asserting that "a Complainant may remove his timely filed EEO complaint to the proper United States District Court if his EEO complaint has not been resolved within 180 days of his requesting an EEOC hearing" and that "[h]ere, there is no question that Plaintiff timely made EEO contact, filed his Formal EEO Complaint, and Requested an EEOC Hearing." FER-63.

Additionally, at oral argument, counsel for Plaintiff further stated: "What [Plaintiff] did was he properly filed a mixed case appeal at the [MSPB] while he had other claims with the EEOC." 1-SER-21 (Feb. 21, 2021 Hearing Tr. at 20:15–

---

evidence of discrimination and retaliation before the district court. *Id*. Argument no. 4 concerns Plaintiff's claim that he did not fail to exhaust administrative remedies for his pre-termination discrimination and retaliation claims. *Id*.

17). Counsel also later added that "all of [Plaintiff's] claims were properly exhausted, and that's why they're properly before the Court . . . under the Title VII, which does not include termination."[3] 1-SER-34 (Feb. 21, 2021 Hearing Tr. at 33:22–24).

If there was any doubt, counsel for Plaintiff also responded to a question from the court about his pretermination claims as follows:

> THE COURT: But, given all of that, you still believe that *McAdams v. Reno* and *Chappelle v. Chao* support your interpretation when all the claims up to the termination are properly before the district court in the Title VII case?
>
> MR. SMITH: Right. Because those claims were properly before the EEOC and the statutory time period had passed since he had requested a hearing. So, by statute, he is able to bring those claims to the district court.

1-SER-35 (Feb. 21, 2021 Hearing Tr. at 34:14–21). Thus, Plaintiff squarely maintained that he had administratively exhausted the sexual orientation discrimination and retaliation claims raised in the Complaint.[4]

---

[3] By excluding termination, Plaintiff for counsel was referring to the claims pending before the EEOC. Plaintiff's termination-related Title VII claims were instead exhausted before the MSPB.

[4] As explained *supra* n. 2, Plaintiff no longer asserts discrimination claims based on race and gender (other than sexual orientation).

**B.    Plaintiff claimed that issues of material fact concerning Defendant's discriminatory and retaliatory motive prevented granting Defendant summary judgment.**

Plaintiff claimed in district court that issues of material fact concerning Defendant's motives for investigating, disciplining, denying overtime, and terminating Plaintiff prevented granting Defendant summary judgment.

Plaintiff argued before the district court that he had "demonstrated that he [had] established a prima facie case of illegal employment discrimination" and that "there are numerous genuine disputes of material fact." FER-55. Plaintiff further cited this Court's decision in *Lindsey v. SLTLA, LLC* about the standard that applies to intentional discrimination cases under Title VII:

> Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.'

FER-62 (citing *Lindsey v. SLTLA, LLC*, 447 F.3d 1138, 1148 (9th Cir. 2006) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985), *amended by* 784 F.2d 1407 (1986))).

As to the evidence, Plaintiff argued that Oda's animus towards him—which tainted the entire investigation and subsequent actions—was based on his sexual orientation and the slurs were direct evidence of discrimination against Plaintiff:

> Plaintiff testified that he is a bisexual and that his sexual orientation was known to Oda. He described in great detail when he first disclosed his sexual orientation to then-Officer Oda. Specifically in 2016, Officer Oda pointed to a man in the parking garage and said "Look at this faggot right here," to which Plaintiff responded "You know you really need to watch what you say. I'm a bisexual and then here you are saying this shit in front of me and it's inappropriate." Just about a month later, the incident where Oda introduced Crowe to a new officer as "FAG" occurred. He testified that he did not find Oda's comment to be joking or funny, nor did Oda ever apologize or put his hands on Crowe's shoulder and say it was a joke. To the contrary, Oda expressed anger and hostility following Crowe reporting Oda's "FAG" comment to management. He testified that Oda stated words to the effect of "I'm never, ever going to help you again" which caused Plaintiff to fear for his own safety. Plaintiff also testified that he believed the Agency retaliated against [him] for filing an EEO complaint.

FER-47 (cleaned up).

At oral argument, counsel for Plaintiff explained Oda's improper influence in the investigation as follows:

> So, in the grand scheme of things, . . . looking at it objectively, . . . you have an officer who has just been reprimanded for making . . . inappropriate statements of a sexual orientation manner, . . . who is now leading an investigation, and . . . the only people that he interviewed were people who had animus against Mr. Crowe.

1-SER-35 (Feb. 21, 2021 Hearing Tr. at 31:7–14). Counsel further argued that

Plaintiff's superiors, Ballesteros and Ingebredsten, "had to have known that

[Plaintiff] was complaining about being called a fag," 1-SER-36 (Feb. 21, 2021

Hearing Tr. at 35:11–12), and closed his argument by stating:

> Regarding credibility determinations, I think there's a lot
> left to be made, which would make summary judgment at
> this point inappropriate because even counsel said it's a
> she-said-he-said. But those are all determinations to be
> made by the trier of fact. And so, in that case, summary
> judgment would be inappropriate at this time regarding
> the Title VII.

1-SER-38 (Feb. 21, 2021 Hearing Tr. at 37:3–9). Thus, Plaintiff consistently

maintained that issues of material fact, including as to the improper motives of

Oda, Ballesteros, and Ingebredsten, prevented the district court from granting

summary judgment for Defendant.

### C.    Plaintiff has consistently claimed that the adverse actions taken against him were both discriminatory and retaliatory in nature.

Plaintiff also claimed in district court that the adverse actions taken against

him were both discriminatory based on his sexual orientation and retaliatory

because of his protected EEO activity.

Plaintiff contested the abandonment of his retaliation claims, which he

consistently asserted since first filing his EEO complaint. 2-ER-256–280. Indeed,

Plaintiff has two sets of retaliation claims: (1) those arising from pre-termination

adverse actions, which he preserved by timely filing a complaint with the EEOC,

*id*.; 5-ER-882, 954; FER-59, and (2) those arising from his termination, which he

asserted as a defense to termination before the MSPB. 5-ER-864–884.

Concerning pre-termination retaliation claims, Plaintiff argued in district court that he preserved those claims by timely filing a complaint with the EEOC. *Supra* at 5-6.

Concerning retaliatory termination claim, the district court's assumption that Plaintiff abandoned this claim rests on (1) a misinterpretation of Plaintiff's failure to dispute one of Defendant's concise statement of fact, which Plaintiff adequately addresses in the Opening Brief, Op. Br. 40-41, and (2) the failure to review the AJ and MSPB decisions holding that retaliation is a form of discrimination. Moreover, Plaintiff argued in district court that he testified before the MSPB that "he believed the Agency retaliated against [him] for filing an EEO complaint," FER-47, and he did testify to that effect. 4-ER-839:1–11. Most significantly, the AJ expressly addressed the retaliation argument in her Initial Decision, Op. Br. 41-42, and as explained below, the MSPB considers retaliation as a form of discrimination so that Plaintiff only had to raise discrimination as a single defense to argue that his termination was both discriminatory and retaliatory in nature. *Infra* at 19-21.

Defendant's tortured explanation that the AJ was only referring to Plaintiff's protected status and not his participation in EEO activity (Ans. Br. 37) is belied by (1) the record, which is replete with protected EEO activity by Plaintiff, from his complaint against Oda for calling him a fag to his EEO complaint and MSPB case, 1-ER-170, 2-ER-281–285, 5-ER-864–884, and (2) the AJ's Initial Decision, which

reviewed evidence of Plaintiff's EEO activity in reaching its conclusion about the agency not retaliating against Plaintiff. 1-ER-87 (mentioning that the deciding officials were "aware of the appellant's EEO complaint, which was based on sexual orientation, several months prior to the issuance of his removal decision."). Thus, Plaintiff has consistently maintained that the pre and post-termination adverse actions taken against him were due to <u>both</u> sexual orientation discrimination and retaliation.

### D. Plaintiff has consistently claimed that the recanted and re-recanted testimony of Garcia is insufficient to sustain the MSPB decision.

Finally, Plaintiff has consistently maintained that the recanted and re-recanted testimony of Garcia was insufficient to sustain the MSPB decision. FER-16–19. Defendant does not argue otherwise.

Therefore, Defendant's contention that Plaintiff waived several arguments made in support of claims consistently asserted by Plaintiff has no merit.[5] *Pallares-Galan*, 359 F.3d at 1095 ("[I]t is claims that are deemed waived or forfeited, not arguments.").

---

[5] In addition, "while not the norm, circuit precedent authorizes this Court to reach issues not presented by the parties below but raised on appeal." *Flemming v. Matteson*, 26 F.4th 1136, 1144 (9th Cir. 2022) (cleaned up). Such review is particularly appropriate "when the issue presented is a pure question of law," which is the case here. *Wong as Tr. of Anaplex Corp. Emp. Stock Ownership Plan v. Flynn-Kerper*, 999 F.3d 1205, 1214 n. 11 (9th Cir. 2021) (cleaned up).

## II. Defendant Failed to Address Plaintiff's Preservation of His Pre-Termination Discrimination and Retaliation Claims before the EEOC.

Like the district court, Defendant ignored the relevant procedural history in this case, which, inconveniently for Defendant, includes Plaintiff severing his pre-termination claims from his wrongful termination claim by dismissing the latter from his EEO complaint. Op. Br. 12; 5-ER-882.[6] Defendant also does not address that the EEOC's failure to decide Plaintiff's pre-termination claims within 180 days from the filing of the EEO Complaint allowed Plaintiff to pursue his Title VII claims in district court pursuant to 29 C.F.R. § 1614.407(b) and 42 U.S.C. § 2000e-16(c). Op. Br. at 28.

Other than waiver, the only arguments Defendant makes in this respect is that the EEO proceeding and the MSPB appeal "overlapped" and that Plaintiff's counsel admitted at oral argument that "the issue of assigning Officer Oda to the investigation was presented to the MSPB." Ans. Br. 35-36.

Having similar and overlapping issues should not matter, however, because the claims are based on different adverse actions altogether and the MSPB did not have the authority to even consider whether pre-termination adverse actions taken against Plaintiff, such as the investigation, placement on administrative duty, and

---

[6] Defendant appears to claim, absurdly, that Plaintiff somehow waived this uncontroverted fact, which is part of the procedural history of the case. Ans. Br. 13 n. 2.

denial of overtime, were discriminatory or retaliatory in nature. *See* Op. Br. 26-28 (addressing argument). Thus, the resolution of Plaintiff's affirmative defenses by the MSPB did not resolve the claims raised in his EEO complaint about pre-termination adverse actions. *Id*.

As to the alleged "admission" from oral argument, it appears to be based on an inadvertent error by Plaintiff's counsel, who was trying to distinguish between the "termination claim" dismissed from the EEOC and pursued with the MSPB, and his pre-termination claims still pending before *the EEOC*, not with the MSPB as counsel inadvertently wrongly stated. Ans. Br. 36; 1-SER-33-34. This much is clear from the exchange between the district court and counsel later at oral argument (reproduced *supra* at 6), where counsel explained that Plaintiff's "claims up to the termination," *i.e.*, his pre-termination claims, "were properly before the EEOC." 1-SER-35 (Feb. 21, 2021 Hearing Tr. at 34:14–21).

Thus, Defendant failed to address the district court's erroneous assumption that Plaintiff could have raised "his entire case" before the MSPB, 1-ER-22, which is the fundamental premise for later holding that Plaintiff had failed to exhaust his administrative remedies for his pre-termination claims. Op. Br. 20-23.

**III.**   **Slurs Used Repeatedly By Investigator into Plaintiff's Alleged Misconduct Are Sufficient Direct Evidence of Discriminatory Intent, Even Without Comparator Data.**

Like the district court, Defendant justifies the summary judgment decision on the basis that Plaintiff did not present comparator data. Ans. Br. 39; 1-ER-32–33. Comparator data, however, is not necessary when a plaintiff presents direct and indirect evidence of discriminatory intent as Plaintiff has done here.

This Court has explained that a disparate treatment claim under Title VII can be established one of two ways:

> A plaintiff may establish a *prima facie* case of disparate treatment by satisfying the *McDonnell Douglas* four-part test, thereby creating a rebuttable presumption of discriminatory treatment, *or by presenting actual evidence, direct or circumstantial, of the employer's discriminatory motive*.

*Lowe*, 775 F.2d at 1009 (emphasis added). While the *McDonnell Douglas* test requires comparator data, "a relevant comparator is not an element of a disparate treatment claim" and "the existence of a comparator is only one way to survive summary judgment on a disparate treatment claim." *Ballou*, 29 F.4th at 424–25 (cleaned up). "With or without comparator evidence, courts determine whether a government action was motivated by discriminatory purpose by engaging in the sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id*. (cleaned up). Thus, Defendant and the district court were both

wrong in maintaining that Plaintiff's lack of comparator data was fatal to his Title VII claims. This alone justifies reversing the district court's decision.

There was also comparator data right in front of the district court, namely, Defendant's treatment of Officer Oda, but the district court simply failed to look at the evidence in the light most favorable to Plaintiff. Defendant argues that Oda was not a comparator, because he was not accused on having sex during work hours. Ans. Br. 40-41. However, Plaintiff was initially accused of confronting a TAMC employee during duty hours about a personal matter. 2-ER-185. This is comparable to Plaintiff's initial complaint about Oda calling him fag, which resulted in no investigation, a quick reprimand, and a promotion for Oda, even though the reprimand confirmed that Oda had used similar language in the past. 2-ER-170–171, 4-ER-712–713. By contrast, Plaintiff was investigated for months, put on administrative duty, and eventually terminated. If Plaintiff had been treated the same as Oda was, Plaintiff would have received a reprimand a couple of days later. Thus, Plaintiff *was* treated differently from someone outside his protected status.

Leaving comparator data aside, the direct and indirect evidence of discriminatory motive on the part of Oda, Ballesteros, and Ingebredsten is also sufficient to deny Defendant summary judgment. Op. Br. 29-39. In this respect, this Court has emphasized that *any* direct evidence of discriminatory intent is generally sufficient to survive summary judgment:

15

> When a plaintiff does not rely exclusively on the
> presumption but seeks to establish a *prima facie* case
> through the submission of actual evidence, very little
> such evidence is necessary to raise a genuine issue of fact
> regarding an employer's motive; any indication of
> discriminatory motive—including evidence as diverse as
> the defendant's reaction, if any, to plaintiff's legitimate
> civil rights activities; and treatment of plaintiff during his
> prior term of employment; defendant's general policy
> and practice with respect to minority employment—may
> suffice to raise a question that can only be resolved by a
> factfinder. Once a *prima facie* case is established either
> by the introduction of actual evidence or reliance on the
> *McDonnell Douglas* presumption, summary judgment for
> the defendant will ordinarily not be appropriate on any
> ground relating to the merits because the crux of a Title
> VII dispute is the elusive factual question of intentional
> discrimination.

*Lowe*, 775 F.2d at 1009. Here, Oda's repeated use of slurs together with

Ballesteros and Ingebredsten's failure to adequately reprimand Oda—promoting

him instead—and their appointment of Oda to investigate Plaintiff a mere weeks

after Plaintiff complained about Oda's use of slurs create issues of material fact as

to whether the adverse actions against Plaintiff were taken, at least in part, because

of his sexual orientation or as retaliation. Op. Br. 30-37.

Defendant's arguments to the contrary are not credible.

First, Defendant argues that Ballesteros' "management" of the investigation

somehow insulated it from Oda's obvious bias against Plaintiff, Ans. Br. 41-42, as

if Oda was not doing the bulk of the investigative work and Oda had no influence

whatsoever on Ballesteros' decisions about the investigation. *See Godwin v. Hunt*

*Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998) (explaining that disputes about whether specific individuals were involved in the adverse employment action are "for the trier of fact to resolve"); *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039–40 (9th Cir. 2005) ("Where, as here, the person who exhibited discriminatory animus influenced or participated in the decision making process, a reasonable factfinder could conclude that the animus affected the employment decision."); *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1560 (9th Cir. 1994) (noting that the university hiring process is "not insulated from the illegitimate biases of faculty members" and that among a group of fifteen decisionmakers, "even a single person's biases may be relatively influential.").

Second, Defendant claims that "there is no evidence that Ballesteros possessed knowledge of Crowe's sexual orientation." Ans. Br. 43. This too is an issue of material fact in controversy, because Plaintiff complained about being called a fag to Ballesteros and thus, Ballesteros had notice that Plaintiff may not be heterosexual. 2-ER-170.

Third, Defendant further argues that even if Ballesteros knew about Plaintiff's sexual orientation, appointing someone with an open bias against Plaintiff's sexual orientation is insufficient evidence of discriminatory intent. Ans. Br. 43. This argument is reprehensible; such appointment is *at best* deliberately indifferent towards Plaintiff's civil rights as a bisexual person and at worst a way

17

to put Plaintiff back in his place as a "fag" for complaining about slurs at work. *See Garcia v. Allstate Ins. Co*., 357 F. App'x 773, 775 (9th Cir. 2009) (denying summary judgment, where male employee had made "gender-oriented derogatory comments" against female plaintiff and supervisor suggested that same male co-worker "would decide whether [Plaintiff] would keep her job.").

Finally, Defendant argues that Oda's promotion shortly after being reprimanded for calling Plaintiff a fag on multiple occasions is also not evidence of discrimination, because Oda "admitted to the wrongdoing and apologized and all parties felt that the matter had been resolved." Ans. Br. 43. This is clearly contested by Plaintiff, however, who maintains instead that he was not satisfied with the resolution and that Oda was unhappy and threatened Plaintiff with never helping him ever again. FER 47; 4-ER-827:22–828:13.

Therefore, by granting summary judgment to Defendant on the basis that Plaintiff did not produce comparable data, the district court applied the wrong legal standard and failed to look at the direct and indirect evidence of discrimination in the light most favorable to Plaintiff.[7]

---

[7] This same direct and indirect evidence is sufficient to create an issue of material facts as to whether the purported reasons for investigating and disciplining Plaintiff were pretextual. *Farrens v. Esper*, 806 F. App'x 539, 541 (9th Cir. 2020) (reversing district court's finding that plaintiff had "failed to provide sufficient evidence that the government's proffered non-discriminatory reasons for the reassignment were mere pretext," where there was direct evidence of discriminatory intent by person

**IV.    Plaintiff Consistently Raised and Did Not Abandon His Pre-Termination and Post-Termination Retaliation Claims Before the EEOC and the MSPB, Respectively.**

Since filing his first EEO complaint, Plaintiff has consistently asserted that the pre-termination and post-termination adverse actions taken against him were the result of sexual orientation discrimination as well as retaliation for protected activity. 2-ER-256–280; 5-ER-864–884, 954; FER-59.

Concerning Plaintiff's pre-termination retaliation claims, those were preserved as part of Plaintiff's EEOC complaint. *See supra* 12-13.

Concerning Plaintiff's retaliatory termination claim, Defendant argues that the district court was correct in finding that Plaintiff had abandoned his retaliatory termination claim, because Plaintiff allegedly conceded that he only raised discrimination as a defense before the MSPB. That is incorrect, misleading, and contrary to the Initial Decision and MSPB decisions on discrimination, which consider retaliation a form of discrimination and thus, part of a single affirmative defense.

---

with influence over decision). Moreover, in mixed motive cases, where discrimination is a motivating factor together with legitimate reasons justifying the adverse employment action, Plaintiff is entitled to, at a minimum, declaratory relief, attorney's fees, and costs. *See* 42 U.S.C. § 2000e-5(g)(2)(B); *O'Day v. McDonnell Douglas Helicopter Co*., 79 F.3d 756, 760 (9th Cir. 1996) (discussing remedies where evidence justifying adverse employment action is discovered after the discriminatory behavior).

As explained in the Opening Brief, Plaintiff and the AJ understood that Plaintiff's sexual orientation discrimination and retaliation were a single defense. Op. Br. 41-42. Indeed, in her initial order concerning affirmative defenses, the AJ also discussed retaliation as being a form of discrimination:

> Federal employees are protected against discrimination based on sex by 42 U.S.C. § 2000e-16. *Savage v. Department of the Army*, 122 M.S.P.R. 612 ¶¶ 36, 37 (2015). The Board has held that a violation is established where the appellant shows that discrimination or *retaliation* "was a motivating factor in the contested personnel action, even if it was not the only reason." *Id*., ¶ 41.
>
> The Appellant may meet this burden to establish a violation of 42 U.S.C. § 2000e-16 in several ways. One way is by introducing direct evidence of discrimination or *retaliation*. *Id*. ¶ 42.

5-ER-49 (emphasis added).

In recognizing retaliation as a form of discrimination, the AJ was simply following the cited MSPB precedent in *Savage*. Specifically, the MSPB has recognized that Title VII's "requirement that [personnel] actions 'be made free' from . . . discrimination is itself sufficiently broad to prohibit retaliation against an employee who complained of . . . discrimination." *Savage*, 122 M.S.P.R. 612 ¶ 37 (2015) (discussing how the rationale of *Gomez–Perez v. Potter*, 553 U.S. 474 (2008) for expanding ADEA anti-discrimination protections to include retaliation also applies to Title VII). Thus, under Title VII, the MSPB has held that retaliation

is a form of discrimination prohibited by 42 U.S.C. § 2000e-16. *Id*. For that reason, Plaintiff only had to assert a *single affirmative defense* of discrimination, which included both sexual orientation discrimination and retaliation.

If there was any doubt that by asserting a single defense of discrimination Plaintiff did not abandon his retaliatory termination claim, in his submission to the MSPB, Plaintiff maintained that he had "established, by preponderance of the evidence, the affirmative defense that the Agency took its actions on the basis of Appellant's sexual orientation (bi-sexual) and/or reprisal (prior protected EEO activity)." 7-ER-1498; *see also* 4-ER-773, 853–854 (arguing retaliation as an affirmative defense before AJ). Therefore, the Defendant and the district court's arguments for Plaintiff abandoning its retaliatory termination claim are contrary to MSPB precedent, the Initial Decision, and the record before the MSPB.

## V. Defendant, the MSPB, and the District Court All Failed to Address the Circumstances under Which Garcia Re-Recanted Her Testimony against Plaintiff, which Was under the Threat of Being Terminated Herself.

Like the AJ and the district court, Defendant offers no explanation for why Garcia's re-recanted testimony should be believed in light of the re-recantation being given under threat of termination from employment. 7-ER-1413–1414.

The references to the AJ's findings do not help Defendant. That "Garcia's testimony and descriptions of the location and context were corroborated by other testimony and photographic evidence" merely show that she had been in the room

before, but not that she had sex with Plaintiff during work hours. Ans. Br. 49.

Similarly, Garcia's demeanor and detailed testimony may bear on her credibility in

general but are not evidence that she had sex with Plaintiff during work hours

either. Ans. Br. 50. Ultimately, this simply shows that the AJ believed Garcia over

Plaintiff based mainly on her impression of both parties, even though Garcia had

recanted and later re-recanted her testimony under threat of termination and had

ample motive to lie, whereas Plaintiff, who up to that point had a clean

employment record, had consistently denied the allegations against him.

Given that Garcia's testimony was essentially given under duress (*i.e.,* threat

of being fired), Garcia's testimony is inherently non-credible. And without it, there

is simply not sufficient evidence to sustain Plaintiff's dismissal from his work.[8]

Op. Br. 43-46.

//

//

//

//

//

---

[8] Defendant did not argue otherwise in the Answering Brief.

## CONCLUSION

Plaintiffs respectfully request that this Court reverse the MSPB's Initial Decision and the district court's order granting Defendant's motion to dismiss, or in the alternative, for summary judgment, and remand with instructions to proceed to trial on all counts of the Complaint.

Dated: April 27, 2022

*/s/* Mateo Caballero

MATEO CABALLERO
Hawaii Bar No. 10081
mateo@caballero.law
P.O. Box 235052
Honolulu, Hawaii 96823
Telephone: (808) 600-4749

CABALLERO LAW LLLC


ELBRIDGE W. SMITH
Hawaii Bar No. 2079
shlaw@hawaii.rr.com
ELBRIDGE ZENICHI SMITH
Hawaii Bar No. 10120
shlaw@hawaii.rr.com
745 Fort St Ste 311
Honolulu, HI 96813-3803
Telephone: (808) 523-5050
Facsimile: (808) 538-1382

SMITH HIMMELMANN AAL ALC

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and Circuit R. 32-3(2) because this brief contains 5,158 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman type.


Dated: April 27, 2022                  Respectfully submitted,


                                       /s/ Mateo Caballero
                                       _____
                                       Mateo Caballero
                                       CABALLERO LAW LLLC

                                       Elbridge W. Smith
                                       Elbridge Zenichi Smith
                                       SMITH HIMMELMANN AAL ALC

                                       *Attorneys for Plaintiff-Appellant*